IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROSA SANCHEZ CAMARILLO, | § § § | |
| *Plaintiff,* | § § | SA-20-CV-01019-ESC |
| vs. | § § § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| *Defendant.* | § § | |

### ORDER

This order concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II and an application for social security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). On November 4, 2021, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#14], Defendant's Brief in Support of the Commissioner's Decision [#17], Plaintiff's Reply Brief [#19], the transcript ("Tr.") of the SSA proceedings [#11], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that the ALJ failed to articulate a legally sufficient basis for rejecting the opinion of the State Agency Medical Consultant on reconsideration that Plaintiff can engage in only *occasional* handling and fingering. The ALJ's finding that Plaintiff can do no more than *frequent* handling and fingering is not supported by substantial evidence. The ALJ therefore violated 20 C.F.R. § 404.1520c in evaluating Plaintiff's manipulative limitations. The Court will therefore vacate the opinion of

1

the Commissioner finding Plaintiff not disabled and remand this case for further proceedings consistent with this opinion.

## I. Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#7, #13, #14].

## II. Legal Standards

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual Background

Plaintiff Rosa Sanchez Camarillo filed her applications for DIB and SSI on January 4, 2018, and March 10, 2018, respectively, alleging disability beginning June 16, 2016. (Tr. 219.) At the time of her DIB and SSI applications, Plaintiff was 44 years old with an eleventh-grade education and had past relevant work as a home health-care provider and phone programmer. (Tr. 219, 245–46.) The related medical conditions upon which Plaintiff based her initial DIB application were carpal tunnel syndrome, headaches, heart problem, lupus, anxiety disorder, depression, endometriosis, insomnia, and fibroids. (Tr. 244.) Plaintiff's applications were denied initially on October 24, 2018, and again upon reconsideration on December 18, 2018. (Tr. 98, 133.)

Following the denial of her claim, Plaintiff requested an administrative hearing. Plaintiff and her attorney, Angie Saltsman, attended the administrative hearing before Administrative

Law Judge ("ALJ") Bernard McKay on August 14, 2019. (Tr. 30–66.) Plaintiff and vocational expert ("VE") Michael Stinson provided testimony at the hearing. (*Id.*)

The ALJ issued an unfavorable decision on November 29, 2019. (Tr. 13–23.) The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 16, 2016, the alleged disability onset date. (Tr. 16.) At step two, the ALJ found Plaintiff to have the severe impairments of lupus, fibromyalgia, and depression. (Tr. 16–18.) At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 18–20.)

Before reaching step four of the analysis, the ALJ found Plaintiff retains the residual functional capacity ("RFC") to perform light work except that she should do no more than occasional posture changes (such as stooping, kneeling, crouching, and crawling) and should not be expected to do more than frequent handling and fingering. (Tr. 20–21.) The ALJ also limited Plaintiff to simple instructions and tasks due to concentration limitations. (*Id.*) At step four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. (Tr. 21–22.) Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as merchandise marker, photocopy machine operator, and router. (Tr. 22–23.) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act, and therefore not entitled to receive DIB. (Tr. 23.)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on November 29, 2019.  (Tr. 10.)   On August 28, 2020, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff raises one point of error in this appeal—that the ALJ's treatment of Plaintiff's manipulative limitations is unsupported by substantial evidence.  More specifically, Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Javier Torres, the State Agency Medical Consultant ("SAMC") on reconsideration; Dr. Torres opined that Plaintiff was limited to only occasional handling and fingering due to a documented history of bilateral carpal tunnel syndrome over a period of years.  Plaintiff argues that the ALJ erred both in concluding (1) that her carpal tunnel syndrome was not a severe impairment and (2) that Dr. Torres's manipulative limitations stemming from her carpal tunnel syndrome were inconsistent with and unsupported by the medical records and other evidence in the record.  The Court agrees with Plaintiff that the ALJ's findings with respect to her manipulative limitations are not supported by substantial evidence and this error was not harmless.

**A.**     **Relevant Medical Evidence in the Record and ALJ Treatment**

Plaintiff has a well-documented history of lupus and fibromyalgia, and the ALJ concluded that these conditions constitute severe impairments that affect Plaintiff's ability to work. (Tr. 16.)  At issue is whether Plaintiff has additional limitations due to her diagnosis of carpal tunnel syndrome.  The medical records demonstrate that Dr. Pablo Guajardo, an orthopedic surgeon, diagnosed Plaintiff with bilateral carpal tunnel syndrome due to hand pain and numbness on June 9, 2015.  (Tr. 342.)  At her initial visit with Dr. Guajardo, Plaintiff complained of loss of sensation in her fingers during sleep, difficulty lifting her left arm due to

shoulder pain, weakness in her hands, difficulty with fine manipulation, and neck pain. (*Id.*) Plaintiff rated her pain at an 8 to 9 out of 10. (*Id.*) Dr. Guajardo performed a physical examination and found bilateral weakness in Plaintiff's pinch and grip, decreased bilateral sensation in Plaintiff's first three fingers, and some swelling in Plaintiff's fingers. (*Id.*) Plaintiff tested positive on the Phalen and Reverse Phalen tests (wrist flexion tests to evaluate nerve compression in carpal tunnel syndrome), as well as the Tinel Sign test (test to evaluate irritated nerves). (*Id.*) Dr. Guajardo gave Plaintiff a left wrist injection and determined that Plaintiff would benefit from a short course of physical therapy. (*Id.*) Dr. Guajardo also ordered electrodiagnostic tests (EMG/NCV) to evaluate the electrical activity of the muscles and nerves in Plaintiff's bilateral upper extremities; ordered x-rays of her cervical spine, left shoulder, and bilateral wrists; prescribed Plaintiff pain medication; and directed Plaintiff to wear wrist splints at night. (Tr. 343.)

X-rays were performed on June 15, 2015. (Tr. 345–47.) The x-rays of Plaintiff's wrists depicted carpal bones with normal alignment, no evidence of fracture or subluxation, and no bony or joint abnormality. (Tr. 345.) Plaintiff had some mild degenerative changes in her shoulder joints. (Tr. 347.) Plaintiff had a follow-up visit with Dr. Guajardo 14 days later, on June 23, 2015. (Tr. 341.) At this appointment, Plaintiff reported that the left carpal canal injection gave her "much relief" for a "long period of time." (*Id.*) Dr. Guajardo decided to hold off on any other injections until after the EMG/NCV tests, after which he would either continue with injections or possible surgery. (*Id.*) There are no further treatment records from Dr. Guajardo in the administrative record.

After this visit, the record contains imaging from a February 2016 appointment with radiologist Dr. Allan Traux. (Tr. 436.) Dr. Alexander Mora, Plaintiff's primary care physician,

referred Plaintiff to Dr. Traux for additional x-rays due to Plaintiff's rheumatoid arthritis, lupus, and a one-year history of joint pain in her hands, elbows, feet, shoulders, and spine. (*Id.*)  Dr. Traux's x-rays found Plaintiff to have mild spurring and joint space narrowing in her hands and wrists but no acute erosions.  (Tr. 436–37.)  Dr. Traux diagnosed Plaintiff with mild osteoarthritis of the hands and wrists, shoulders, ankles, and mild spondylosis of the lumbar, thoracic, and cervical spine. (Tr. 437–38.)

In October 2016, Plaintiff had a visit with Dr. Mora. (Tr. 408–10.)  At the visit, Plaintiff complained of increased joint pain that was not relieved by medication. (*Id.*)  Dr. Mora recommended a follow up with Dr. Guajardo for "lupus arthritis bilat CTS" (carpal tunnel syndrome). (*Id.*)  Dr. Mora continued to reference carpal tunnel syndrome as one of Plaintiff's "problems" in records throughout 2018 and 2019 and consistently documented Plaintiff's significant finger, joint, and wrist pain and her need for a referral to rheumatology for further treatment. (Tr. 505, 561–66, 570–73, 575–77, 584–90.)  Plaintiff's last visit in the record with Dr. Mora was in September 2019, at which she complained of joint pain and Dr. Mora referenced her carpal tunnel syndrome. (Tr. 584–90.)  Plaintiff consistently rated her pain at an "8" on a ten-point scale in every visit with Dr. Mora over a period of several years and referenced pain that was localized in her chest and hands.  (Tr. 412, 422, 500, 512, 559, 567, 573, 581, 590.)

The initial level SAMC, Dr. Kim Rowlands, reviewed the medical records in October 2018 and assessed Plaintiff with an RFC for light work with no manipulative limitations.  (Tr. 76, 91.)  Upon reconsideration in December 2018, Dr. Artur Oczko and Dr. Javier Torres agreed with Dr. Rowlands and found Plaintiff capable of performing work at a light RFC but added additional manipulative limitations due to Plaintiff's "several year documented history of

7

bilateral carpal tunnel," indicating that Plaintiff should "avoid constant repetitive hand motions such as fingering/typing" and limited Plaintiff to only occasional handling and fingering. (Tr. 110, 127.)

In August 2019, Plaintiff testified before the ALJ at a live hearing. (Tr. 30–66.) At the hearing, Plaintiff provided extensive testimony on her limitations in her hands and fingers. Specifically, Plaintiff testified that she has pain and swelling in her hands that is more or less constant if she is using her hands; that she drops things all the time, such as her coffee or water bottle, due to poor grip strength; that it is difficult to open doorknobs; that she cannot wear jeans because she lacks the ability to manipulate buttons; that both keyboarding and grabbing things are difficult; and that she cannot work on a computer because her fingers cramp up and her hands fall asleep. (*Id.*) Plaintiff further testified that she has more bad days than good days, and on her good days she can prepare a bowl of cereal or a sandwich but still requires her daughter to push her grocery cart and relies on her 18 and 20-year-old children for help with most household chores. (*Id.*) Plaintiff testified that she is even unable to move clothes from the washer to the dryer due to the weight and pain. (*Id.*) For relief, Plaintiff lies down and uses warm towels and puts braces on her wrists, but they do not provide adequate alleviation of her symptoms. (Tr. 35.)

In evaluating the medical evidence, including the SAMC opinions at the initial level and upon reconsideration, and Plaintiff's testimony at the ALJ's hearing, the ALJ concluded that Plaintiff's carpal tunnel syndrome "does not have more than a minimal effect on her ability to perform basic work activities" and was therefore not a severe impairment. (Tr. 18.) The ALJ further concluded that Plaintiff can perform work at the light exertional level, rejected Dr. Torres's manipulative limitations (<u>occasional</u> handling and fingering), and concluded Plaintiff

should not be expected to do more than "frequent handling and fingering.". (Tr. 20.) In doing so, the ALJ found the part of Dr. Torres's opinion addressing Plaintiff's manipulative limitations to be only partially persuasive. (Tr. 21.)

The ALJ explained that Dr. Torres imposed the manipulative limitations of occasional handling and fingering because Plaintiff has been diagnosed with bilateral carpal tunnel syndrome. (*Id.*) But the ALJ did not believe that Dr. Torres's conclusion accounted for the fact that Plaintiff had reported relief from this condition with carpal tunnel injections. (*Id.*) In support of this reason for discounting Dr. Torres's conclusion and rejecting the SAMC's more restrictive limitations, the ALJ cited Dr. Guajardo's June 2015 record and noted that other records documented Plaintiff's full range of motion in her extremities, specifically citing records from an Emergency Room visit in June 2016. (*Id.*)

**B.     The ALJ's assessment of Plaintiff's manipulative limitations is not supported by substantial evidence.**

Plaintiff argues that the ALJ erred in failing to find her carpal tunnel syndrome to be a severe limitation and in rejecting Dr. Torres's manipulative limitations related to that syndrome. The Court need not address Plaintiff's argument with respect to the ALJ's categorization of her severe limitations but finds that the ALJ's findings with respect to Dr. Torres's manipulative limitations are not supported by substantial evidence.

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). Accordingly, whether or not the ALJ found Plaintiff's carpal tunnel syndrome to be severe or not severe is not material to this appeal. The ALJ was required to consider the evidence of Plaintiff's carpal tunnel

syndrome regardless of its categorization at step two. But the relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

The Social Security Administration recently promulgated a new rule regarding RFC determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed her DIB and SSI applications in January and March 2018, the new rule applies. This rule addresses how the Commissioner is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2). The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The Commissioner must articulate how persuasive he finds each of the opinions in the record and explain his conclusions with regard to the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The Commissioner may, but is not required to, articulate the consideration of

the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3).  In these situations, the Commission must articulate consideration of the other factors as well.

The ALJ referenced the new regulation in his opinion and discussed the supportability and consistency factors generally in discussing the SAMC's opinions.  (Tr. 20–21.)  The ALJ concluded that the SAMC's assessment that Plaintiff is capable of light work was supported "with evidence documenting complaints of joint pain and some degenerative changes, but also normal findings such as no acute distress and normal gait." (*Id.*)  Additionally, the ALJ found that the SAMC opinions on Plaintiff's light RFC were "consistent with the record as a whole, which documents mostly normal physical exam findings, including full range of motion, ability to heel-toe walk, and no acute distress." (Tr. 21.)  This discussion, however, only addresses Plaintiff's exertional limitations, not her manipulative ones.  The only explanation provided by the ALJ for rejecting Dr. Torres's manipulative limitation is, as noted *supra*, Plaintiff's relief from a carpal tunnel injection in June 2015 and her "full active range of motion of the extremities" in an emergency room visit in June 2016. (*Id.*)  Based on these two pieces of evidence, the ALJ concluded that "the evidence better supports limiting the claimant to frequent handling and fingering, rather than occasional handling and fingering." (*Id.*)  The ALJ's conclusion is not supported by substantial evidence.

The Social Security regulations require the Commissioner (and in turn an ALJ acting for the Commissioner) to articulate "how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [a given] case record." 20 C.F.R. § 404.1520c(b). Although the ALJ is not required to articulate how he or she considered each medical opinion

contained in a medical source statement from a given medical provider, *see id.* at § 404.1520c(b)(2), the ALJ must still provide some explanation for his reasons for rejecting a medical opinion of record. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). The ALJ does not need to comment on every piece of evidence, but he must still "build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 Fed. App'x 985, 987 (5th Cir. 2010) (per curiam). The ALJ failed to do so here.

The ALJ specifically rejected Dr. Torres's manipulative limitations on Plaintiff's ability to perform work requiring fingering and handling. In doing so, the **_only_** explanation provided was Plaintiff's relief from an injection and an emergency room visit documenting full range of motion. A review of these records against the evidence as a whole indicates that they do not provide substantial evidence for the ALJ's findings.

The records of the June 2016 emergency room visit cited by the ALJ relate to Plaintiff seeking treatment at the emergency room for non-radiating acute pain in her low back, and the records do not mention Plaintiff's hands. (Tr. 354.) The notation in the records from that emergency room visit regarding Plaintiff's "full range of motion" cited by the ALJ concern Plaintiff's back, not her hands. (Tr. 355.)

As for the second reason given for discounting Dr. Torres's opinion (the relief Plaintiff experienced from the injection in her wrist), the records indicate that only 14 days had elapsed between the injection and her appointment in which she reported relief. Moreover, the injection at issue occurred in 2015, four years before the ALJ hearing at which Plaintiff described her ongoing difficulties using her hands. Meanwhile, as explained above, her medical records document that, after the date of Plaintiff's injection and follow-up appointment, Plaintiff continued to experience severe hand pain. Importantly, Plaintiff's medical records include an

October 2016 notation by Dr. Mora that Plaintiff needed to return to Dr. Guajardo for further treatment. (Tr. 408–10.)

On this record, there is not substantial evidence to support the ALJ's finding that Plaintiff's hand limitations and symptoms of her carpal tunnel syndrome were more or less resolved. The fact that Plaintiff was in "no acute distress" at her appointments, which the ALJ cites in his discussion of Plaintiff's joint pain for purposes of evaluating her severe impairments at step two, does not provide substantial evidence for the ALJ's conclusion that Dr. Torres's opinion was unsupported by and inconsistent with the record. (Tr. 16–17.) The ALJ's explanation does not provide a logical bridge between the evidence on Plaintiff's hand limitations and his determination as to Plaintiff's RFC generally and fails to sufficiently address the supportability and consistency factors as to Dr. Torres's opinion on Plaintiff's manipulative limitations.

The Commissioner argues that there is ultimately substantial evidence to support the ALJ's determination that Plaintiff has no manipulative limitations because the SAMC at the initial level, Dr. Rowlands, assessed Plaintiff with no manipulative limitations—fewer limitations than the ALJ's "no more than frequent" finding—and the ALJ was entitled to weigh the evidence and split the difference between the two SAMC opinions. The Commissioner also argues that the ALJ was entitled to conclude that Plaintiff's functional limitations were from lupus, not carpal tunnel syndrome. The Court disagrees with the first argument. And the Commissioner misses the point with the second.

First, the ALJ did not explicitly distinguish between Plaintiff's lupus symptoms in her hands from those stemming from her carpal tunnel syndrome. The ALJ's discussion of Dr. Torres's opinion on Plaintiff's manipulative limitations, regardless of the condition to which they

13

are attributed, was flawed.  Moreover, it is not this Court's or the Commissioner's role to supply a post-hoc explanation for the ALJ's RFC where the ALJ himself failed to provide an adequate one.  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("Courts may not accept appellate counsel's *post hoc* rationalizations for agency action . . . ."); *Noranda Alumina, L.L.C. v. Perez*, 841 F.3d 661, 666 (5th Cir. 2016) (quoting *Burlington Truck Lines*).  Disability decisions "must stand and fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.  The ALJ failed to build a "logical bridge" between the documented evidence regarding Plaintiff's limited ability to use her fingers and hands, his rejection of Dr. Torres's opinion, and his ultimate determination that Plaintiff suffers from practically no limitations in manipulation.  *See Price*, 401 Fed. App'x at 986.  This was error.

The ALJ's error was not harmless.  An error is not harmless if it affected Plaintiff's substantial rights and the outcome of the proceedings.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) ("[P]rocedural perfection is not required unless it affects the substantial rights of a party.").  Had the ALJ found Plaintiff capable of "no more than frequent" fingering and handling, he may not have reached the ultimate conclusion that she is capable of performing such occupations as merchandise marker, photocopy machine operator, and router.  (Tr. 23.)

## V.  Conclusion

Based on the foregoing, the Court finds that the ALJ failed to articulate sufficient reasons for rejecting Dr. Torres's opinion as to Plaintiff's manipulative limitations.  Further, the Court finds that substantial evidence does not support the ALJ's conclusions that Plaintiff can engage in "no more than frequent" handling and fingering.  The Court finds these errors were not harmless. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

SIGNED this 16th day of November, 2021.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE